UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Frederick Stampone,

              Plaintiff,                    Case Number: 25-10172
                                               Honorable Denise Page Hood

v.

Warden Curley, et al.,

              Defendants.

_____/

## OPINION AND ORDER

Michigan prisoner Frederick Stampone, currently confined at the Baraga Correctional Facility in Baraga, Michigan, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The complaint names 26 defendants and challenges the conditions of Plaintiff's confinement. For the reasons that follow, the Court will dismiss the following defendants without prejudice for misjoinder: Curley, Bogue, Wilkins, Baril, Tarango, Hubble and Jungct. The case is dismissed with prejudice as to all other defendants.

### I. Complaint

Plaintiff was housed at the Parnall Correctional Facility in Jackson County from December 2023 until October 23, 2024, when he was transferred to the Newberry Correctional Facility in Luce County. (ECF No. 1, PageID.7, 18.) He remained at Newberry until December 18, 2024, when he was transferred to his

present place of confinement, Baraga Correctional Facility in Baraga County. (*Id.* at PageID.20.) The allegations in the complaint concern matters arising at all three prisons. Plaintiff seeks monetary and injunctive relief.

Parnall Correctional Facility: Plaintiff signed up for a porter job when he arrived at Parnall Correctional Facility. (*Id.* at PageID.7-8.) His first day on the job was September 15, 2024. On September 25, 2024, corrections officer Hepler fired him for being late to work and issued a misconduct ticket for being out of place. (*Id.* at PageID.8.) Plaintiff maintains that he reported on time, but defendant Hepler crossed his name off the sign-in list. (*Id.*) He claims that Hepler did so with the intent of bullying Plaintiff. (*Id.* at PageID.8-9.) Plaintiff filed a grievance with defendant Heidi Washington (Director of the Michigan Department of Corrections (MDOC)), and Noah Nagy (warden, Parnall Correctional Facility). His grievance was rejected. (*Id.*)

Defendant Lieutenant Vandanburg found Plaintiff guilty of the misconduct. (*Id.* at PageID.9.) Plaintiff claims that Vandanburg found him guilty as a means of bullying and harassing him. (*Id.*) On October 5, 2024, Plaintiff sent defendant Desnoyer a kite requesting two copies of the hearing report, a second step appeal form, and a copy of the misconduct ticket. (*Id.*) Plaintiff received the requested items on October 9, 2024. (*Id.*)

2

Plaintiff filed an appeal with defendant Lafave, Parnall's deputy warden. (*Id.*) Plaintiff claims that Lafave affirmed the guilty finding in order to wrongfully punish, bully and harass Plaintiff. (*Id.*)

From September 26, 2024 through October 2, 2024, Plaintiff received call-outs for his porter job and signed in each time. (*Id.* at PageID.10.) On October 2, 2024, Hepler told Plaintiff that he had been fired and should not sign in anymore. (*Id.*) Plaintiff filed a grievance with Washington and Nagy. (*Id.*) He has not received a response. (*Id.*)

On October 9, 2024 defendant corrections officer Lyon issued Plaintiff a misconduct ticket for being out of his cell when "on sanction." (*Id.*) Plaintiff objected because he had not been told he was on sanction and his previous misconduct did not result in sanctions. (*Id.*) He later received the hearing report which showed that he had been sentenced to 7 days loss of privileges for the September 25, 2024 misconduct. (*Id.*)

Plaintiff sent a kite to Desnoyer requesting copies of the hearing report and appeal forms for the October 9 misconduct. (*Id.* at PageID.10-11.) He also sent a kite to Lafave requesting a third-step appeal form for the September 25 misconduct. (*Id.* at PageID.11.)

On October 15, 2024, Plaintiff sent a grievance to Nagy and Washington informing them that he had not been paid for his porter work. (*Id.*) This, he claims,

means that he performed slave labor and amounts to elder abuse. (*Id.*) Plaintiff sent several additional grievances to Nagy and Washington concerning the allegedly unjustified misconduct tickets. (*Id.* at PageID.11-14.)

On June 20, 2024, Plaintiff sent a grievance to Nagy and Washington asking to be sent to the hospital for "proper medical treatment immediately." (*Id.* at PageID.13.) Plaintiff had symptoms of the covid virus, so a nasal swab was sent to a lab for testing. Plaintiff argues that prison officials should have had tests available on-site for a faster result. (*Id.*) He claims his sick-bed isolation cell had inhumane conditions – he was locked in his cell "24/7" without a pillow and there was no emergency button in the cell. (*Id.*) Defendant corrections officer Reman refused his request for a pillow. (*Id.*) On June 27, 2024, Plaintiff sent a grievance to Nagy and Washington complaining about these conditions. (*Id.* at PageID.14.) He never received a reply.

On July 13, 2024, Plaintiff told defendant Lantis that he was using an incorrect broom when sweeping the floors. (*Id.*) Plaintiff claimed that the broom pushed toxic dust into his cell. (*Id.*) Officer Cilley (who is not named as a defendant) then threatened to beat Plaintiff. (*Id.* at PageID.15.) Defendant Lantis did nothing to stop Cilley's threats and instead issued a misconduct ticket charging Plaintiff with causing a disturbance. (*Id.*)

On July 31, 2024, Plaintiff was threatened by another inmate in the weight room.  He claims that the weight room is not properly supervised making it a dangerous place.  (*Id.*)  Defendants Washington and Nagy did not respond to Plaintiff's grievance requesting changes to make the weight room safer.  (*Id.*)

Plaintiff claims that, on September 20, 2024, he was intentionally given a slice of pizza that was half the size of the pieces given to other inmates.  (*Id.*)  When he refused to take the tray, defendant Stockman told him to take the tray or get out of the chow hall.  (*Id.*)  Defendant corrections officer Fetterhoff refused to take any action in response to Plaintiff's complaints.  (*Id.* at PageID.15-16.)

Plaintiff received no response to a grievance submitted to Washington and Nagy complaining that food service prisoners gave smaller portions to white prisoners than to black prisoners.  (*Id.* at PageID.16-17.)

Plaintiff received no response to a grievance submitted to Washington and Nagy complaining that he observed two prisoners "throwing large gravel rocks at a cute little cotton tail bunny rabbit."  (*Id.* at PageID.17.)  He also observed prisoners throwing these rocks at each other.  He asked that all gravel be removed from the yard to remove this threat.  (*Id.*)

Plaintiff claims that, in retaliation for his grievances, Washington and Nagy transferred him to "the wors[t] prison … north of Wisconsin between Lake Michigan [and] Lake Superior … very cold with a lot of snow."  (*Id.* at PageID.17.)  He also

claims that the journey from Parnall to Newberry Correctional Facility took "two miserable days" during which he was continually handcuffed and shackled. (*Id.*)

Finally, with regard to Parnall Correctional Facility, Plaintiff claims that unidentified Parnall employees failed to ensure that his property was transferred to Newberry. (*Id.* at PageID.18.) This caused him to have to obtain new medication and glasses. (*Id.*)

Newberry Correctional Facility: Plaintiff arrived at Newberry on October 25, 2024. He was not permitted to attend church services from the date of his arrival until November 11, 2024. (*Id.*)

On December 15, 2024, Plaintiff was attacked by two inmates. (*Id.* at PageID.19.) When he returned from the hospital, Defendant corrections officer Bogue unjustly issued him a false misconduct for fighting. (*Id.*) Bogue fabricated false evidence against him. (*Id.*) A few days later, deputy warden Hubble transferred Plaintiff to Baraga Correctional Facility even though Plaintiff told him he did not want to be transferred. (*Id.* at PageID.20.)

Baraga Correctional Facility: Plaintiff complains about many food-related issues during his incarceration at Baraga including: he was not served breakfast on several occasions, his food trays often lacked cake or cookies, his sugar packs were placed in the butter or jelly or salad dressing on several dates, and his food was often served cold. (*Id.* at PageID.21-22.)

Plaintiff also claims that prison personnel failed to timely process his outgoing legal mail.  (*Id.* at PageID.22-23.)

On December 30, 2024, he missed a medical appointment because no one was available to transport him.  (*Id.* at PageID.24.)

<u>Criminal Prosecution</u>:  Finally, Plaintiff raises claims concerning the criminal prosecution which resulted in the kidnapping conviction for which he is incarcerated. He asserts claims of malicious prosecution, defamation, and false arrest against these defendants: Kent County Sheriff's Deputy Michael Tanis, Kent County Prosecutors Becker and Bartlett, Governor Gretchen Whitmer, Attorney General Dana Nessel and Solicitor General Fadwa Hammoud.  (*Id.* at PageID.25-26.)

## II.  STANDARD

Under the Prison Litigation Reform Act of 1996 ("PLRA"), the Court is required to *sua sponte* dismiss an in forma pauperis complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). The Court is similarly required to dismiss a complaint seeking redress against government entities, officers, and employees which is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.  A complaint is

frivolous if it lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

A pro se civil rights complaint is to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But a *pro se* plaintiff must still comply with minimum pleadings standards.  Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citation omitted). This notice pleading standard does not require "detailed" factual allegations, but does require more than the bare assertion of legal principles or conclusions. *Twombly*, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations and footnote omitted).

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a

person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009). Additionally, a plaintiff must allege that the deprivation of rights was intentional. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986).

## III. DISCUSSION

### A. <u>Misjoinder</u>

Because the complaint concerns events occurring at three different correctional facilities involving 26 defendants, the question of improper joinder arises.

The joinder of claims, parties, and remedies is "strongly encouraged" where appropriate in the interest of judicial economy and fairness. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, and Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party

asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (internal quotation omitted).  When determining if claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts ... are related; whether more than one act ... is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id*. (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which is to reduce the large number of frivolous prisoner lawsuits. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation ... 'by making all prisoner [litigants] ... feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*,

116 F.3d 1126, 1127-28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136-137 (5th Cir. 1996)).

Here, Plaintiff's claims are not sufficiently transactionally related to warrant joinder.  Plaintiff raises similar claims (*e.g.*, unjust misconduct tickets, interference with legal mail, and inadequate meals), but the alleged constitutional violations occurred at different prisons, involve distinct factual allegations, and different defendants.

Under Rule 21 of the Federal Rules of Civil Procedure, however, "[m]isjoinder of parties is not a ground for dismissing an action." *Id*. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572-73 (2004)("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time ....'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988)("[D]ismissal of claims against misjoined parties is appropriate.").

The Court will retain the defendants located at Parnall Correctional Facility which is the first facility mentioned in the complaint and the only facility located in the Eastern District of Michigan.  The Court will exercise its discretion under Rule

11

21 and dismiss without prejudice defendants located at the Newberry and Baraga Correctional Facilities.   The following are the improperly joined and dismissed defendants: Curley, Bogue, Wilkins, Baril, Tarango, Hubble, Jungct.  If Plaintiff wishes to procced with his claims against the improperly joined Defendants, he may do so by filing new civil actions in the appropriate District Court.

## B.  Defendants Washington and Nagy

Plaintiff raises two general claims against defendants Washington and Nagy, neither of which state a claim for relief.  First, he argues that contends that Defendants Washington and Nagy transferred him to a prison in the Upper Peninsula in retaliation for filing grievances.

To state a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Additionally, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

An inmate also has a right to file non-frivolous grievances against prison officials on his own behalf. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).

The Court assumes without deciding that the grievances were non-frivolous and, therefore, constitute protected conduct.

A prisoner's transfer from one prison to another generally "does not constitute an adverse action since a transfer is merely an ordinary incident of prison life." *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005). Consequently, an alleged retaliatory transfer ordinarily "should be characterized as de minimis and dismissed at the summary judgment stage." *Id.* at 703. However, in cases where foreseeable, negative consequences "inextricably follow" from a transfer, the determination of "'[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact.'" *Id.* at 702-04 (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). The Sixth Circuit has recognized certain situations where transfers can constitute adverse actions, such as where the consequences from a transfer affect an inmate's access to the courts, id., or result in an increased security level. *King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005). Other consequences do not rise to the level of adverse actions for retaliation claims. *See Dykes-Bey v. McRoberts*, No. 16-1228, 2016 WL 11618608 (6th Cir. Sept. 13, 2016) (loss of employment); *Johnson v. Hoffner*, No. 17-2102, 2018 WL 4488737, at *3 (6th Cir. Apr. 20, 2018) (increased distance from visitors); *Hudson v. Wade*, 2014 U.S. App. LEXIS 25160 (6th Cir. Mar. 5, 2014) (where new facility was inferior because it provided less law library access, housed mentally ill

prisoners, had a documented racist history, required prisoners to make calls outside in cold weather, and was known for elevating minor rule violations to major misconducts).

Plaintiff's transfer did not constitute an adverse action because he did not allege "foreseeable consequences" as a result of his transfer that "would deter a prisoner of ordinary firmness from continuing to engage in the protected conduct." *See id.* at 701-02. Furthermore, Plaintiff was not transferred to a higher security level facility -- Parnall and Newberry Correctional Facilities are both Level I facilities.

As to the causal connection, there are no factual allegations showing that Washington and Nagy had any involvement in the decision to move Plaintiff or that the move was motivated by Plaintiff's grievances.  Conclusory allegations of a retaliatory motive are insufficient to state a claim. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Accordingly, Plaintiff fails to state a retaliation claim.

Second, Plaintiff's allegation that Washington and Nagy failed to respond to his grievances does not state a constitutional claim.  The First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances."  U.S. Const. amend. I.  A prisoner has a First Amendment right to file grievances against prison officials, *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), but the First Amendment does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a citizen's petition for

redress of grievances.  *See Smith v. Arkansas State Highway Employees*, *Local 1315*, 441 U.S. 463, 464-65 (1979); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.").

A prisoner also does not have a constitutionally-protected interest in an inmate grievance procedure or the right to an effective procedure.  *See e.g., Walker v. Michigan Dep't of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing cases).  Thus, Plaintiff's claim that Washington and Nagy failed to properly or adequately respond to his grievances fails to state a claim on which relief may be granted.  See *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (holding that a defendant's denial of an administrative grievance was "insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983"); *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) ("the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983").

## C. Defendants LaFave, Vandanburg and Desnoyer

Plaintiff names LaFave and Vandanburg as defendants because they found him guilty of misconducts.  He claims that they reached their guilty verdicts as a

means of bullying and harassing him.  (ECF No. 1, PageID.9.)  A plaintiff "must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Although a *pro se* litigant is entitled to liberal construction of his pleadings, he must allege more than "conclusory allegations or legal conclusions masquerading as factual conclusions" with respect to "all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

The same reasoning applies to defendant Desnoyer.  Plaintiff claims that Desnoyer was tardy in providing Plaintiff with a copy of the misconduct hearing report.  As a result, Plaintiff did not know that he had been sanctioned with 7 days loss of privileges and received a misconduct ticket for failing to abide by the sanction.  Plaintiff claims that Desnoyer delayed providing the report so that Plaintiff would receive another misconduct.  Plaintiff alleges no facts which would demonstrate that Desnoyer's response time was motivated by a desire to bully or harass Plaintiff.  Moreover, the documents submitted by Plaintiff show that he asked Desnoyer to provide two copies of the report on October 5, 2024, and Desnoyer sent the copies on October 8, 2024, hardly an inordinate delay.  Plaintiff fails to state a claim against Desnoyer.

### D.  Defendant Lyon

Plaintiff alleges that defendant corrections officer Lyon issued Plaintiff a misconduct ticket for being out of his cell when he had been sanctioned with loss of privileges for a prior misconduct even though Plaintiff was not aware of the sanctions.  (Id.)  Plaintiff's disagreement with the issuance of a misconduct ticket, without more, is insufficient to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (2007). His allegation against Lyon simply does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### E.  Defendants Reman and Lantis

Plaintiff claims defendant corrections officer Reman denied him a pillow on one occasion when Plaintiff was sick with Covid-19 and housed in an isolation cell. He also claims that corrections officer Lantis refused Plaintiff's request that Lantis use a different broom because the broom Lantis used pushed dust into Plaintiff's cell. that he was denied.  The Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Plaintiff does not allege with any specificity that he suffered any pain or illness due to his lack of a pillow or use of a particular broom or that he was at any risk of serious harm. Therefore, these claims are meritless.

Additionally, Plaintiff's fails to state a claim against Lantis regarding his allegation that Lantis failed to do anything when another corrections officer threatened him.  Verbal threats are generally "actionable under § 1983 only if [they] amount[ ] to an assault, result[ ] in physical harm, or [are] part of a pattern of unnecessary and wanton abuse." *Guzinski v. Hasselbach*, 920 F. Supp. 762, 764, n.1 (E.D. Mich. 1996) (emphasis added) (citing *Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986)).  Additionally, Plaintiff fails to allege that Lantis engaged in any active unconstitutional behavior.

## F.  Defendants Ryder and Moses

Aside from naming grievance coordinators Ryder and Moses as defendants, Plaintiff makes not specific factual allegations against them.  It is a basic pleading requirement that a plaintiff must attribute factual allegations to particular defendants.  Each defendant must have "fair notice" of the claim against him and "the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Because Plaintiff does not allege any facts about how Ryder and Moses personally acted to engage in unconstitutional conduct, his claims against these defendants will be dismissed.

## G.  Defendant Hepler

Plaintiff alleges that defendant Hepler fired him from his prison job as a porter.  A prisoner has no constitutionally protected right to a prison job or a particular prison wage. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)

(holding that an inmate has no constitutionally protected property or liberty interest in prison employment); *Dellis v. Corrections Corporation of America*, 257 F.3d 508, 511 (6th Cir. 2001) (holding that district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job). Plaintiff, therefore, fails to state a claim arising from his termination from the porter job.

## H. Defendants Fetterhoff and Stockman

Next, Plaintiff alleges that defendants Fetterhoff and Stockman refused to remedy the situation when Plaintiff was given a slice of pizza half the size of the pieces given to other prisoners. The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate...food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting Farmer, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. The deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (finding that denial of seven meals over six days was not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (concluding that denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not rise to Eighth Amendment violation, where the prisoner failed to allege that his health suffered).

As held in the caselaw set forth above, the deprivation of a few meals for a limited period fails to state an Eighth Amendment claim.  It follows that Plaintiff's allegations concerning smaller portions is insufficient to rise to an Eighth Amendment violation.

## I.  Criminal Prosecution

Plaintiff raises claims concerning the criminal prosecution which resulted in the kidnapping conviction for which he is incarcerated.  He asserts these claims against Defendants Tanis, Becker, Bartlett, Governor Whitmer, Attorney General Nessel and Solicitor General Hammoud.  (*Id.* at PageID.25-26.)

 A state prisoner does not state a cognizable civil rights claim challenging his imprisonment if a ruling on the claim would necessarily render his continuing confinement invalid, until and unless the reason for that confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  A claim under § 1983 is an appropriate remedy for a state prisoner challenging a condition of his imprisonment, *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973), not the validity of continued confinement. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The underlying basis for the holding in Heck is that "civil tort actions are

not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486.

If the plaintiff were to prevail on his claims challenging his prosecution, his criminal convictions and related confinement would be called into question. These claims are barred by *Heck* and will be dismissed.

## J. Property Claims

Plaintiff argues that defendants located at Parnall Correctional Facility failed to ensure that his property was transported to Newberry Correctional Facility when Plaintiff was transferred. This claim does not entitle him to relief.

The negligent or intentional deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong. *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (ruling that negligence does not amount to a "deprivation" implicating due process) (overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). To maintain a §1983 action "claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiff has not alleged or shown that Michigan's judicial remedies are inadequate or that it would be futile to present his claim in the Michigan state courts. He has an adequate remedy in the state courts. *See Copeland*

*v. Machulis*, 57 F.3d 476 (6th Cir. 1995).  Thus, Plaintiff fails to state a claim upon which relief may be granted under § 1983.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's claims against Defendants Curley, Bogue, Wilkins, Baril, Tarango, Hubble and Jungct are DISMISSED WITHOUT PREJUDICE.

Plaintiff's claims against the remaining defendants are DISMISSED and this case is CLOSED.

**SO ORDERED**.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated:  July 24, 2025